# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

APRIL SANDOVAL,
EVANJELINA VIGAL,
and YVONNE ARCHULETA,

      Plaintiffs,

      v.                                                         09cv1028 WJ/ACT

JOSEPH ROMERO, VICTOR BACA,
JOHNNY LUJAN, PATRICK SNEDEKER,
in their individual capacities, and BOARD
OF COUNTY COMMISSIONERS OF
SAN MIGUEL COUNTY, NEW MEXICO,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Partial Summary Judgment
filed on January 10, 2011 by Plaintiffs Sandoval and Vigal (**Doc. 72**).  Having considered the
parties' briefs and the applicable law, I find that Plaintiffs' motion is not well-taken and,
therefore, is denied.

### Background

April Sandoval and Evanjelina Vigal ("Plaintiffs" for purposes of this motion) were
female inmates at San Miguel County Detention Center ("SMCDC") in San Miguel County,
New Mexico.  They allege that they were sexual harassed and sexually assaulted by male
detention officers and male inmates while they were incarcerated at SMCDC.  The complaint
alleges violations of Plaintiffs' civil rights under the Eighth, Thirteenth, and Fourteenth
Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985 and 1986, and state

law violations under the New Mexico Tort Claims Act.  In this motion, Plaintiffs move for summary judgment against the four individual Defendants ("Defendants" for purposes of this motion), Romero, Baca, Lujan and Snedeker,[1] who Plaintiffs allege either directly committed or actively participated in the alleged rapes, sexual abuse, and violation of bodily integrity.

Defendants Romero and Baca were employed as detention officers at SMCDC when the alleged incidents occurred.  Defendant Johnny Lujan was employed at SMCDC as a Major and Chief of Security at the facility. Defendant Snedeker was the Warden at SMCDC.

In this motion, Plaintiffs move for summary judgment on Counts I and II of the Complaint, as well as Defendants' affirmative defenses.  Count I alleges cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments against Defendants Romero and Baca.  In Count I, only Plaintiff Sandoval asserts claims against Defendant Baca, but both Plaintiffs assert claims against Defendant Romero.  Count II alleges cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments against Defendants Snedeker and Lujan (asserted against both Defendants by both Plaintiffs).

## II.    Parties' Positions

The Court reviewed a significant number of facts in addressing this motion.  Defendants filed two responses to Plaintiffs' motion for summary judgment (one by Defendant Romero, and the other by the other individual Defendants).  Plaintiff filed one reply to each of these responses.  Plaintiffs' statement of undisputed facts spans the allegations of both Plaintiffs with regard to all four Defendants. In the end, all of these facts can be distilled into several paragraphs for purposes of the background facts.

---

[1]  Defendants Baca, Lujan and Snedeker filed a collective response (Doc. 76). Defendant Romero filed a separate response (Doc. 75).

A.    <u>Plaintiff Sandoval / Defendants Baca and Romero</u>

The main question which underlies Plaintiffs' claims against both Defendants Baca and Romero is whether Plaintiffs were raped – as Plaintiffs allege – or whether they voluntarily and willingly engaged in the sexual encounters.  Plaintiff Sandoval claims that Defendant Baca removed her from her cell, escorted her to the laundry facility and then sexually assaulted her. Defendant Baca claims that Plaintiff Sandoval initiated and consented to having sexual intercourse with him. Plaintiff Sandoval also claims that Defendant Romero was directly involved in the incident.  Defendant Romero instructed Defendant Baca to remove Sandoval from her cell while the cells were being mopped, and to take her to the prison laundry.  Sandoval alleges that during the sexual assault, she heard what she thought was Defendant Romero's voice was heard over the intercom telling Defendant Baca to "take his time" because he already "got his money."  Defendant Romero also insists that he had no personal involvement in any alleged constitutional violation.

In December, 2008, Defendant Baca entered a guilty plea to criminal sexual penetration ("CSP") in the second degree for the felony crime of Criminal Sexual Penetration, contrary to NMSA 1978, § 30-9-11(E)(2) based on the above-described events. Section 30-9-11(E)(2) criminalizes sexual penetration by a perpetrator "in a position of authority over the inmate. . . ." Defendant Baca received a probated sentence and was placed on supervised probation for a period of five years.

B.    <u>Plaintiff Vigal / Defendant Romero</u>

Plaintiff Vigal does not allege any claims against Defendant Baca.  She alleges that Defendant Romero agreed to be paid $100 by inmate Henry Duran to get Plaintiff alone with Duran.  Plaintiff Vigal claims that Duran then raped her in the sally port of SMCDC.  Defendant

3

Romero does not dispute that Duran offered to pay him $100 to work out an arrangement where Duran could have contact with Plaintiff Vigal, but argues that the sexual encounter between the two was consensual.

In relation to his actions in November 2007, Defendant Romero pleaded guilty to the third-degree felony of Demanding or Receiving a Bribe by a Public Officer of Public Employee, contrary to NMSA 1978, § 30-24-2.  He received a 36 month suspended sentence following his guilty plea.  Ex. 9.

C.   Plaintiffs' Claims against Defendants Lujan and Snedeker

Plaintiffs claim that Defendants Lujan and Snedeker were aware of past incidents involving sexual abuse in the facility, and were aware that the facility lacked adequate procedures for protecting female inmates from threats to their safety and bodily integrity. Plaintiffs allege that, despite this knowledge, these Defendants failed to provide adequate training and supervision which amounted to deliberate indifference, and that this failure resulted in Plaintiffs being sexually assaulted by Defendants Baca and Romero.

Defendants Lujan and Snedeker maintain that they responded adequately to any known risks of danger to Plaintiffs' personal safety and bodily integrity, and also that their conduct does not amount to deliberate indifference.

**III.   Legal Standard**

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer*, 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to

4

respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). In this case, Plaintiff as the movant may not rest on averments in its pleadings, "but instead must establish specific triable issues." *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The Court views the evidence in the light most favorable to Defendants as the non-moving parties. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007). Also, as the non-moving party, Defendants must put forth specific facts showing that there is a genuine issue of material fact for trial; they may not rest on mere allegations or denials in his own pleadings. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).

## Discussion

Plaintiffs allege that Defendants acted in a manner which violated the Eighth Amendment prohibition on cruel and unusual punishment and their right to be secure in bodily integrity as guaranteed under the substantive component of the Fourteenth Amendment.

A prison official violates the Eighth Amendment when he uses excessive force against an inmate in the form of rape or sexual abuse. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). A plaintiff alleging violation of the Eighth Amendment must first prove that the alleged deprivation was objectively "sufficiently serious," depriving her of "the minimal civilized measure of life's necessities." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998) (internal quotations omitted). A plaintiff must also satisfy the subjective prong of the analysis by showing that the defendant must have had "a sufficiently culpable state of mind, meaning he exhibited "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Such conduct occurs when a defendant

disregards a "known or obvious risk that [was] very likely to result in the violation of a prisoner's constitutional rights." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993).

Sexual abuse satisfies the objective prong of the Eighth Amendment inquiry. *Smith v. Cochran*, 339 F.3d at 1212.  The Tenth Circuit has expressly acknowledged that "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003 (quoting *Hovater,* 1 F.3d at 1068); *Barney*, 143 F.3d at 1310. Furthermore, that same sexual abuse satisfies the subjective prong of the Eighth Amendment inquiry.  "In cases of sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *Cochran*, 339 F.3d at 1212 (internal quotations omitted).  Because sexual abuse has no legitimate penological purpose, courts can presume that the perpetrator had a sufficiently culpable state of mind.  *Id.*

**I.      Count I - Allegations by Plaintiff Sandoval Against Defendant Baca**

Plaintiff[2] argues that Defendant Baca's plea to CSP is, in itself, sufficient to show a violation of both the objective and subjective prongs of the Eighth Amendment's prohibition against excessive force.  The Court must therefore resolve the threshold question of whether Defendant Baca's plea short-circuits an Eighth Amendment analysis.

A.      <u>Whether Defendant Baca's Plea of CSP Precludes an Eighth Amendment Analysis</u>

Plaintiff argues that because liability under that provision of the statute is premised on a correction officer's authority, she lacked the capacity to consent, and thus Defendant Baca's plea estops him now from a defense to Plaintiff's Eighth Amendment claim.  For support, Plaintiff

---

[2]  Only Plaintiff Sandoval asserts claims against Defendant Baca in Count I, but both Plaintiffs argue that Baca's plea estops him from a defense on the Eighth Amendment claims.

refers to this Court's Memorandum Opinion and Order in a similar case involving a sexual assault of a female inmate by a corrections officer, *Spurlock v. Townes*, No. 09cv786 WJ/DJS, Doc. 76 at 11-12 (D.N.M. May 26, 2010).  In that case, Anthony Townes, the defendant in the civil case, pled to a charge of guilty to four counts of CSP by one in a position of authority, in violation of the same New Mexico statute, § 30-9-11.  Mr. Townes was judicially estopped from contesting the facts underlying Plaintiffs' claims.  *See* No. 09cv786, Doc. 76 at 9.  However, this case cannot follow *Spurlock* because there is an important difference between the defendant in *Spurlock* and Defendant Baca in the instant case: Mr. Townes stipulated to the facts in the indictment – that he intentionally restrained plaintiff without her consent.  There is no such admission by Defendant Baca in this case.

Defendant argues that consent raises an issue of fact in an Eighth Amendment claim, notwithstanding a conviction under the state statute, and relies for support on *Giron v. Corrections Corp. of America*, 191 F.3d 1281 (10th Cir. 1999).  In *Giron*, the Tenth Circuit made clear that sexual abuse that is done with force is in itself malicious, and satisfies the subjective prong of an Eighth Amendment analysis:

> The Tenth Circuit has not previously determined whether a prison guard may raise consent as an affirmative defense to a § 1983 allegation of this nature, nor is the law clearly established elsewhere. At least one circuit has gone farther than the district court did here – holding that the "inmate must . . .  prove, as an objective matter, that the alleged abuse or harassment caused 'pain,'" *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997), and that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment." Id. at 1339; see also *Fisher v. Goord*, 981 F.Supp. 140, 174 (W.D.N.Y.1997) ("[C]onsensual sexual interactions between a correction officer and an inmate, although unquestionably inappropriate, and in this Court's view despicable, do not

7

constitute cruel and unusual punishment under the Eighth Amendment.").[3]

191 F.3d at 1287. Plaintiff attempts to distinguish *Giron* because at the time *Giron* was decided, New Mexico law had yet to criminalize sexual penetration of an inmate by a perpetrator "in a position of authority over the inmate. Plaintiff argues that therefore, pleading guilty to § 30-9-11(E)(2) eliminates any consent defense a civil defendant might pursue. The problem with accepting the distinction offered by Plaintiff is that there is no legal authority for the proposition that the state statute supplants the usual Eighth Amendment constitutional inquiry. That inquiry examines whether a defendant's conduct is sufficiently serious to deprive an inmate of a minimal civilized measure of life's necessities, and whether that defendant has a sufficiently culpable state of mind. *Barney v. Pulsipher*, 143 F.3d at 1310.

   *Giron* is not the only case to note that claims based on sexual conduct in prison that is not unwelcome do not rise to the level of a constitutional claim. For example, in *Ware v. Jackson County, Mo*., the Eighth Circuit noted that while consensual sex between inmates and prison personnel violates prison policy, claims based on such conduct are "arguably are not of constitutional magnitude." 150 F.3d 873, 881 (8th Cir. 1998) (citing *Newman v. Holmes*, 122 F.3d 650, 653 (8th Cir.1997) ("[V]iolation of an internal prison regulation does not by itself give rise to an Eighth Amendment claim."). In an earlier Eighth Circuit case, *Freitas v. Ault*, the court held that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment." 109 F.3d 1335,

---

   [3] While the court noted that the defendant in *Giron* relied on plaintiff's consent as an affirmative defense, there was no suggestion that consent had to be presented as affirmative defense. In fact, the Tenth Circuit's statements in *Giron* emphasized the lack of clarity in the law on that issue. The law has become no clearer on that issue since *Giron*. For this reason, the Court rejects Plaintiff's argument that Defendant's "consent defense" is waived because it was not asserted as an affirmative defense.

1339 (8th Cir.1997).  Plaintiff contends that *Freitas* is inapposite because it addressed sexual

harassment, and not the crime of sexual penetration. The court in *Freitas* clarified that sexual

harassment must be unwelcome to give rise to a cause of action for sexual harassment.  I find

that *Freitas* is still relevant, despite Plaintiff's attempt to distinguish it from the instant case.

The question of whether harassing conduct is "unwelcome" is just as applicable to the sexual act

– which can also be either unwelcome or consensual.

Other courts have recognized and approved the position taken by the Defendants in this

case.  In *McGregor v. Jarvis*, 2010 WL 3724133, 10-11(N.D.N.Y.,2010) , the court granted

defendant's motion for summary judgment and dismissed the case, rejecting plaintiff's argument

that even a consensual relationship between an inmate and a prison guard violates the federal

constitution:

> we are not swayed by Plaintiff's argument that just because for criminal
> prosecution purposes a inmate is considered incapable of providing consent, this
> necessarily equates to, in terms of civil rights vindication, a finding that the
> "consensual" relationship between [them] per se violated the Federal
> Constitution.

*Id*. at *11. The court also noted that other courts in other jurisdictions "have unequivocally stated

that a consensual sexual relationship, while inappropriate, does not establish a per se Eighth

Amendment violation."[4]

_____

[4]  These other decisions included: *Hall v. Beavin*, 202 F.3d 268, 1999 WL 1045694, at *1
(6th Cir.1999) (unpublished decision) (finding no merit to plaintiff's Eighth Amendment claim
where the "evidence established that [plaintiff] voluntarily engaged in a sexual relationship with
[defendant] ); *Wood v. Idaho Dep't of Corr.*, 2009 WL 3104036, at *3-6 (D.Idaho Sept. 22,
2009) (holding that inmate could not base constitutional claim on consensual sexual encounters);
*Stubbs v. DeRose*, 2007 WL 776789, at *7 (M.D.Pa. Mar. 12, 2007) ("Consensual sex between
two adults does not constitute cruel and unusual punishment simply because it occurs within the
walls of a prison."); *Doe v. Cunningham*, 2007 WL 990141, at *2 (W.D.Va. Mar. 29, 2007)
("This Court is persuaded that the Eighth Circuit['s decision in the *Freitas* case] was correct
when it found that welcome, voluntary attentions are not violations of a prisoner's rights, even

The parties in *Phillips v. Bird*, unpubl. dec., 2003 WL 22953175 (D.Del.,2003), stipulated that they engaged in several consensual acts. The court found that there was no evidence in the record "that plaintiff engaged in sexual acts with defendant . . . against her will, or that a coercive quid pro quo scheme was in place." The court stated that there were no decisions from that jurisdiction or any others which held that consensual sex between an inmate and a prison guard constitutes a violation of the Eighth Amendment. *Id*. at *6 ("[c]onsensual sex between two adults does not constitute cruel and unusual punishment simply because it occurs within the walls of a prison."). The court in *Phillips* acknowledged an earlier case in the same jurisdiction which had held otherwise. In *Carrigan v. Davis*, 70 F.Supp.2d 448 (D.Del.,1999), the court found that sexual intercourse between inmate and officer constituted per se violation of inmate's Eighth Amendment rights. However, the *Phillips* court pointed out that there was no legislative history or case cited in *Carrigan* that supported the *Carrigan* court's conclusion that consensual sex between a prison inmate and a guard, in the prison setting, rises to the level of a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id*. at *4 ("Indeed, the underpinning for the court's decision is at odds with that conclusion.").

Plaintiff also claims that a female inmate is incapable of giving consent to have sex in circumstances where a male corrections officer has a position of authority. This may be true to the extent that it bears on the validity of the consent, and that it demands a careful scrutiny of the evidence – but it does not eliminate the need for inquiring whether there was consent.

Accordingly, based on my review of the case law on this issue, I find that Defendant Baca's plea to CSP does not estop Defendant from a defense to Plaintiff Sandoval's Eighth

─────────────────────

when they are prohibited by state law").

Amendment claims.  This finding would also apply to the other similar claims in this lawsuit.

Thus, if Defendant Baca is able to present issues of material fact which regarding whether the

sexual encounter with Plaintiff was consensual, he may withstand summary judgment.

B.      Whether Plaintiff is Entitled to Summary Judgment

At the time of the alleged incidents, Plaintiffs Sandoval and Vigal shared the same

segregation cell, although Sandoval does not remember why she was in segregation. Ex. C at

103-04.  Plaintiff Sandoval remembers that Defendants Baca and Romero took both her and

Plaintiff Vigal to clean out the sally port.  At some point, Defendant Romero took Sandoval back

to the cell, while Vigal stayed behind cleaning.  Ex. C at 47.  Sandoval had taken 300 milligrams

of Seroquel to help her sleep that evening before going to the sally port and was falling asleep

when Defendant Baca went into her cell and asked her if she wanted to get "oranges," meaning

orange jumpsuits or uniforms.  Ex. D at 22. Sandoval explained that she thought she was going

to get "extra clothes or extra hygiene packs" and so she went with Defendant Baca. Ex. C at

49:16-17; *see also* Ex. C at 49 at 2-4 ("[a]nybody is always willing to get extra towels or an extra

toothbrush or anything").

When Defendant Baca took her to the laundry, he pushed himself on her. He took off his

pants and her clothes while she fought with him. Ex. C at 60-61.  Plaintiff said she fought back

as best she could while under the influence of the medication.  She remembers raising her voice

because the women's pod was nearby, but was unsuccessful in fending him off.  Plaintiff also

stated that Defendant Baca cleaned up his "mess" after he ejaculated on the mattress.  Ex. C at

66.

Defendant's version lines up with Plaintiff's to the point of arriving at the laundry.  In

Defendant Baca's account, once they were in the laundry room, Plaintiff Sandoval not only

11

initiated the encounter, but also she became the aggressor.  Baca states that Sandoval went voluntarily with him to get the extra clothing.  However, he claims that Sandoval took *his* pants off and then took off her own underwear.  Ex. D at 23, 25.  He describes Sandoval as initiating the encounter when she heard the voice on the intercom.  Ex. 2 at 17:1-4 ("[Sandoval] jumped at me and started kissing me, and everything went from there.").  He claims that there was "no force involved."  Ex. D at 21:13-15.

There was some confusion over the significance of the voice heard over the intercom with regard to Plaintiff Sandoval's alleged sexual assault.  However, Sandoval understood the reference to $100 to be connected to Plaintiff Vigal's assault, and that it had no direct bearing on her encounter with Defendant Baca. Ex. E (Sandoval Dep.) at 110:5-10.  Defendant Baca also stated that Sandoval cleaned up the mattress.  Ex. D at 23 ("She even cleaned the ejaculation with a paper towel and threw it in the trash can.").

While the Court must accept Defendant's version in a favorable light, the evidence must present "a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, the question here is whether Defendant Baca's testimony that the sexual encounter was consensual is evidence (assuming its credibility) on which a reasonable jury could return a verdict in his favor.  Because there is no other evidence corroborating Plaintiffs' version of what actually happened, the Court cannot determine as a matter of law who is telling the truth.  *Cmp. Webb v. Bunch*, unpubl. dec., 1994 WL 36854 (6th Cir.) (dissent) (summary judgment in favor of defendants where overwhelming evidence contradicted prisoner plaintiff's testimony regarding use of excessive force.).  An evaluation of Defendant Baca's credibility must be left to the fact finder. *Bisbee v. Bey*, 39 F.3d 1096, 1101 (10th Cir. 1994).

The evidence here is not so one-sided so as to grant summary judgment to Plaintiff Sandoval.  There is other evidence which could allow a reasonable fact finder to accept Baca's version of the facts. Defendant Baca claims that he had a long-time familiarity with Plaintiff Sandoval, that he had known Plaintiff Sandoval for nine years because he attended high school with her and saw her around town, and that Plaintiff knew his sister.  Ex. 2 (Baca Dep.) at 12; Ex. D (Baca Dep.) at 18:9-11; at 20:14-15.  Plaintiff, however, stated that she did not know Baca from high school.  Ex. C (Sandoval Dep.) at 111.  In addition, there is a Quarterly Report submitted by Defendant Snedeker to the County Manager on County stationery, and dated two months after the alleged incidents,[5] which supports Defendant's position.  In that report, Snedeker states that the Las Vegas Police Department completed an investigation into the allegations of both Plaintiffs Sandoval and Vigal, and concluded that:

> . . . inmate Evangelina Vigal had consensual sexual relations with inmate Henry Duran, permitted by Detention Officer Joseph Romero, who had been offered a monetary bribe.  Inmate April Sandoval had consensual sexual relations, [sic] with Detention Officer Victor Baca.

Doc. 72-7 (Exhibit 8 at 8).

Viewing the facts favorably to Defendant Baca, his familiarity with Plaintiff Sandoval, and other evidence which includes his testimony that Plaintiff not only consented to the encounter but initiated it, I find that Defendant Baca has presented a material issue of fact regarding whether Plaintiff's Eighth Amendment rights were violated.  For this reason, Plaintiff Sandoval is not entitled to summary judgment against Defendant Baca on her Eighth Amendment claims.

---

[5]  The exhibit is actually dated January 4, 2007, but the Court assumes that the correct year is "2008," since the memo refers to the November 1007 incidents.

**II.      Claims Against Defendant Romero by Plaintiffs Sandoval and Vigal**

Both Plaintiffs allege Eighth Amendment violations against Defendant Romero.
Defendant Romero claims that there is no evidence that he personally participated in conduct
which rises to the level of a constitutional violation.  See *Foote v. Spiegel et al.*, 118 F.3d 1416,
1423 (10th Cir. 1997) (Individual liability under § 1983 must be based on personal involvement
in the alleged constitutional violation).  Romero also characterizes Plaintiffs' claims to be
asserted under a respondeat superior theory, which is not permissible in claims brought under 42
U.S.C. § 1983.  *Monell v. Department of Social Serv.*, 436 U.S. 658, 691-94 (1978) (principles of
respondeat superior have no application to § 1983 actions).

A.     Plaintiff Sandoval's Claims Against Defendant Romero

Plaintiff Sandoval alleges that Defendant Romero directed Defendant Baca to take
Plaintiff Sandoval from her cell to get "oranges" in the laundry, and that what she believes was
his voice came over the intercom encouraging Defendant Baca to "take his time" because he
"got his money."  Defendant Romero rebuts this testimony by noting that Plaintiff was not
absolutely certain it was his voice over the intercom (which is correct) and that he did not
personally participate in the alleged assault by Defendant Baca.  This is a tenuous challenge:
while Defendant Romero "contests" Plaintiff Sandoval's statement that she heard his voice over
the intercom by pointing to her lack of complete certainty that it was his voice, Defendant does
not state that it was *not* his voice.  Defendant Romero has not presented a factual dispute
regarding whether it was his voice over the intercom.  *See Bartell v. Aurora Public Schools*, 263
F.3d 1143, 1147 (10th Cir. 2001) ("To successfully oppose summary judgment, the nonmoving
party must show that there is a 'genuine' issue of fact, which requires "more than simply
show[ing] that there is some metaphysical doubt as to the material facts.") (citation omitted).

14

Defendant Romero also contends that there is no evidence of a conspiracy between him and Defendant Baca. This contention has no merit; claims brought under § 1983 also include claims alleging that an individual who "causes" a violation of a person's constitutional rights.[6]

Despite the above findings, Plaintiffs are not entitled to summary judgment, because there exists a dispute as to whether Defendant Baca's conduct – in which Defendant Romero is alleged to have participated – violated Plaintiff Sandoval's constitutional rights.

B.   Plaintiff Vigal's Claims Against Defendant Romero

According to Plaintiff Vigal (Ex. 23 at 99-105), she and Sandoval were cleaning the sally port at SMCDC. They were escorted back to their cell, and Defendant Baca came to take Plaintiff Sandoval out of her cell. Ex. 23 at 99:20-24. Defendant Romero visited the cell, opened the door of the cell and told Plaintiff Vigal, "Let's go" and made a comment about cleaning the laundry. Vigal became suspicious because she and Plaintiff had just finished cleaning in that area. Ex. 23 at 99-100. Romero told Vigal, "I got paid $100 so you have to go with Henry." Ex. 23 at 101. He also said "Don't say anything." Ex. 23 at 102:20-23. Vigal tried closing her cell door. Romero grabbed her by the arm, put her in the sally port with a blanket and threw down a mattress. Vigal remembers trying to pull back because she did not want to go with Romero, but did not struggle because she did not know what Romero meant what he meant by "going with Henry." Ex. 23 at 101-02. Defendant left the sally port, and shortly thereafter, Henry Duran came into the sally port and told Vigal, "I paid for you." Ex. 23 at 107: 15-17. Plaintiff stated

---

[6]   42 U.S.C. § 1983 states, in part:
Every person who, under color of any statute . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

that Duran forcibly took her clothes off and raped her, while she was struggling to resist him. Ex. 23 at 109; Ex. 3 at 109.  Plaintiff was alone and unsupervised with Duran for about 10 minutes.

Defendant Romero admits that he agreed to be paid $100 by inmate Henry Duran in exchange for getting Duran alone with Plaintiff Vigal.  However, according to Romero, Vigal agreed to go in the sally port with Duran.  Ex. A at 89.  Romero stated that he used the master control to unlock Duran's cell and let Duran out of his cell.  Romero then let Duran make a phone call to get the $100 Duran promised him.  Ex. A (Romero Dep.) at 87-88.  Duran grabbed a mattress on the way to the sally port, and brought the mattress back on the way back to his cell. Ex. A at 93.  There is a dispute as to whether Plaintiff Vigal was with Duran 5 to 10 minutes, or 15 to 20 minutes. Ex. A at 91. Romero escorted Plaintiff Vigal back to her cell after the encounter, and then Duran to his cell afterward.  Ex. A (Romero Dep.) at 92:17-20.  Romero claims that he never received the $100 that Duran was supposed to leave outside the sally port. Ex. B (Romero Dep.) at 97.

As with the encounter between Plaintiff Sandoval and Defendant Baca, Plaintiff Vigal is not entitled to summary judgment as long as there are two versions of the incident and these versions are built on material facts.  Whether or not Plaintiff Vigal's encounter with Duran was consensual is material to whether her constitutional rights were violated.  Defendant Romero pled to receiving a monetary bribe.  Plaintiff would be entitled to summary judgment on her Eighth Amendment claim if that bribe was in connection with a sexual assault of Plaintiff Vigal, for the same reason that Plaintiff Sandoval would be entitled to summary judgment if Defendant Baca admitted that the sexual encounter was not consensual.  Both Defendants, however, maintain that the encounters were consensual and voluntary, and a resolution of the matter turns on the credibility of testimony in this case.

16

There is other evidence presented by Defendant Romero which would allow a reasonable fact finder to conclude that Plaintiff Vigal had sex with inmate Duran consensually: the Quarterly Report (identified earlier with regard to Plaintiff Sandoval) in which Defendant Snedeker stated that a police investigation concluded that Plaintiff Vigal had consensual sex with inmate Duran.  Doc. 72 Ex. 8 at 3.

In addition, there are facts regarding the history between Plaintiff Vigal and Duran which merits consideration.  Plaintiff Vigal argues that these facts should be excluded under Fed.R.Evid. 412, which concerns the admissibility of evidence on a victim's sexual behavior or predisposition.  Such evidence is admissible in civil cases for certain purposes and only when certain procedures are followed. *See* Rule 412(b)(2) and (c).  Because Plaintiff presents this objection for the first time in the reply, Defendants have not had an opportunity to argue why this evidence should not be considered at summary judgment stage. Even without a consideration of this evidence, Defendant Romero has presented material disputes of fact to withstand summary judgment on Plaintiff Vigal's Eighth Amendment claims.  Thus, there is no reason to open up the Rule 412 issue at this time.  Should Defendants wish to have evidence which would qualify as Rule 412 evidence admitted for trial, Defendants will be required to follow the procedures outlined in Rule 412(c)(1) and (2), which envisions motions practice as well as a hearing.  Also, if Defendants wish to admit evidence under Rule 412, they shall move for the admission of such evidence within **fourteen (14) days** of the entry of this Memorandum Opinion and Order to initiate the procedures under the Rule.

## III.    Claims Against Defendants Lujan and Snedeker by Plaintiffs Sandoval and Vigal

Plaintiffs assert violations of the Eighth and Fourteenth Amendments against Defendants Lujan and Snedeker, based in part on the policies which these Defendants allegedly enacted and

enforced. Compl. at 65.  They also assert claims based on personal participation in that they had

specific knowledge of facts and circumstances which would have caused a reasonable person to

conclude that a substantial risk of serious harm existed, and that deliberate indifference to a

substantial risk of harm allowed Defendants Romero and Baca to engage in unlawful sexual

assault against the Plaintiffs.

A.      Theories of Liability against County Defendants

According to the complaint, Defendants Lujan and Snedeker ("County Defendants")

occupied positions of supervisory authority and were responsible for hiring, training,

commanding, and supervising Defendants Romero and Baca before and during the time of the

incidents described above.  As mentioned previously, claims brought under § 1983 require a

personal participation in the alleged unconstitutional conduct.

Plaintiffs allege that the County Defendants caused them harm because they were award

of a risk of harm to Plaintiffs but deliberately disregarded those risks and did not intervene to

prevent the incidents from happening. While the County Defendants are supervisory personnel,

for some reason Plaintiffs have chosen to assert claims against them premised on a theory of

direct liability instead of supervisory liability.[7] Doc. 72 at 16-17.  The Court need not tease out

---

[7] There is no concept of strict supervisor liability under § 1983. *Jenkins v. Wood*, 81
F.3d 988, 994 (10th Cir. 1996)  A supervisor is not liable under § 1983 for the actions of a
subordinate unless an "affirmative link" exists between the constitutional deprivation and either
the supervisor's personal participation or his failure to supervise. *Butler v. City of Norman*, 992
F.2d 1053, 1055 (10th Cir.1993). A plaintiff may satisfy this standard by showing the defendant-
supervisor personally directed the violation or had actual knowledge of the violation and
acquiesced in its continuance. *Beedle v. Wilson* 422 F.3d 1059, 1073-74 (10th Cir. 2005).  This
standard requires the same kind of affirmative act or conduct which is required under a theory of
direct liability. Individuals who hold a supervisory role may be liable for their direct actions
even where they did not actually commit the allegedly unconstitutional act.  Thus, Plaintiffs' use
of a direct theory approach is confusing, and does not gain them any advantage.

what Plaintiffs' intentions might be because Plaintiffs are not entitled to summary judgment as to these Defendants under either theory.  However, Plaintiffs' counsel is expect to have this issue clarified at some point prior to trial.

B.    Plaintiffs' Fourteenth Amendment Claims

Plaintiffs also contend that the County Defendants are liable to Plaintiffs under a "danger-creation" theory under the Fourteenth Amendment. Under a danger-creation theory, state officials may be liable for injuries caused by a private actor where those officials created the danger that led to the harm. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir.1999).  Plaintiffs do not specify whether this theory applies to all of Plaintiffs' claims, or all of the individual Defendants.  In fact it would apply only to Defendant Romero's actions in allegedly putting Plaintiff Vigal in the position of being sexually assaulted by inmate Duran.  The theory would not apply to Plaintiff Sandoval's claims because  all of the individuals involved in her alleged assault were state actors.  *See* Compl., ¶¶ 2-8.

More importantly, the danger-creation theory is not appropriate in this case, where Plaintiffs are alleging Eighth Amendment violations.  Where a particular amendment "provides an explicit textual source of Constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 813

_____

Further, the cases on which Plaintiffs rely for asserting claims against the County Defendants on a direct liability theory are cases that did not involve conduct by individuals with any supervisory authority.  *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (presence during search held unnecessary for § 1983 liability for unconstitutional search where one defendant officer authorized search and second defendant officer drafted affidavit for search warrant); *Mink v. Knox*, 613 F.3d 995, 1001 -1002 (10th Cir. 2010) (finding that deputy district attorney's input into the affidavit and warranly directly caused the purportedly unconstitutional search of plaintiff's house).

(1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394- 395 (1989)); *accord, Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir.1996).  The Tenth Circuit has favored using the Eighth Amendment to analyze claims such as the ones brought by Plaintiffs in this case:

> We conclude that the safety and bodily integrity of convicted prisoners implicates both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's substantive protection against state deprivation of life and liberty without due process of law, and that the legal standards under the two amendments are identical under the facts of this case. Because the Eighth Amendment provides the primary source of protection for prisoners, we will, however, refer to the standard as an Eighth Amendment standard.

*Berry v. City of Muskogee, Okla*., 900 F.2d 1489, 1494 (10th Cir. 1990).  Therefore, Plaintiffs' Fourteenth Amendment claims, including the danger-creation theory, will not be considered in addressing Plaintiffs' claims.

C.   <u>Whether Plaintiffs are Entitled to Summary Judgment against County Defendants</u>

Plaintiffs contend that the County Defendants knew, or should have known, of other incidents at the facilities involving sexual assaults of female inmates, and that, despite this knowledge, the Defendants failed to properly education, train and supervise their employees. Plaintiffs base this contention on incidents listed in their Statement of Undisputed Facts Nos. 35-39, and 44-45.  Each of these facts is subdivided into numerous incidents.  Defendants' responses to these statements of facts are sufficient to withstand summary judgment.

Even assuming the County Defendants knew of all these incidents (a large assumption, given that the incidents range in time from as early as 1996, nine years before the instant allegations), many of them are not material or relevant.  For example, some of the incidents involved inmates only and others involved sexual misconduct among city employees.  Some of the incidents are based on "inappropriate" relationships, which were not necessarily sexual assaults.  *See* Statem. of Undisp. Fact 45(b) (in March 2010, medical officer at detention center,

with aid of corrections officer, was engaged in an "inappropriate romantic relationship with an inmate.").

To the extent that any material and relevant incidents were sufficiently similar and were known, these incidents are insufficient to grant Plaintiffs summary judgment because Defendants present evidence that their actions were not carried out with deliberate indifference to a risk of harm to Plaintiffs. Plaintiffs charge the County Defendants with a failure to train. Defendant Romero stated that he received "just the basics. . . ." in training. Ex. 22 at 8. Defendant Lujan described a two-week orientation and on-the-job training given to all new employees, but was not able to identify which courses the new employees actually attended. Ex. B at 36-37. The County Defendants successfully rebut the implication that the training was minimal and inadequate, as for example in Defendant Romero's responses to deposition questions about the training he received:

Q.      Hi, Mr. Romero. I just have a couple of quick, follow-up questions. You had testified that you hadn't received any training about how to conduct yourself with male or female inmates; is that right?

A.      Yes.

Q.      But that doesn't seem to be true. You did have some training –

A.      Yes.

Q.      Okay. . . you were trained that you couldn't put inmates together, male and female inmates together?

A.      Yes.

. . .

Q.      And that you couldn't release [inmates] from their cells unattended?

21

A.      Yes.

Q.      And you also knew you couldn't accept bribes from inmates?

A.      Yes.

Q.      And you also knew you couldn't strip search female inmates –

A.      Yes.

Q.      . . . You knew that you couldn't have sex with inmates?

A.      Yes.

Q.      . . . And you couldn't let inmates have sex with each other?

A.      Yes.

Ex. A (Romero Dep.) at 119-120.  Romero also stated that in his training, he was told "not to

have relationships with either an inmate or an employee."  Ex. 22 at 102-03.  Defendant Baca

gave similar answers in his deposition:

Q.      . . . What kind of training, if at all, did you receive on going into the female pod?

A.      Just, you know, don't touch, don't conversate, just do head count, whatever you've got to

        do, welfare check, and that was it, and always have another officer with you.

Ex. D (Baca Dep.) at 40.

        Defendant Snedeker stated that background checks were performed on all guards prior to

hire, including Defendants Baca and Romero, and that neither had been the subject of inmate

grievances or internal complaints.  Snedeker's office is located on that jail and he stated that he

is frequently present on evenings and on weekends.  The facility was undergoing significant

renovation in order to increase the safety of inmates and detention officers.  Ex. C (Snedeker

Aff.).  There is also evidence presented by the County Defendants that quick corrective and

disciplinary measures taken when prison policies were violated.  Doc. 72, Exs. 11, 14, 15, 16.

Plaintiffs rely on *Tafoya v. Huerfano County*, 516 F.3d 912 (10th Cir. 1008) as a comparison for the instant case, but Plaintiffs miss the mark. The facts in *Tafoya* much more easily show that the county sheriff in that case was deliberately indifferent to sexual assaults that occurred at the jail between male guards and female inmates.  He had taken little or no measures to alleviate the dangerous conditions in the jail of which he was aware and he gave little or no attention to inmate complaints.  This is not the situation here.  The County Defendants have presented facts which infer that the policies and training provided did not deprive Plaintiffs of the minimal civilized measure of life's necessities, and further, that these Defendants did not posses a sufficiently culpable state of mind.

D.     Plaintiffs' Expert Opinion

Plaintiffs offer the expert opinion of Alan Baxter, who concluded, *inter alia*, that: the problem of custodial rape by detention personnel against female inmate is exceptionally well known in the corrections community and either was or reasonably should have been known by Defendant Snedeker and his command staff; that Defendant Snedeker and the County had knowledge of serious and ongoing problems with sexual abuse and improprieties at the Detention Center going back at least a decade; and that the County Defendants failed to properly educate, train, command, supervise and discipline their employees.  Ex. 17 (*Expert Report of Alan Baxter*).

Mr. Baxter's opinion is, as Plaintiffs note, unrebutted by a defense expert.  Defendants contend that the report amounts to a conclusory statement without a factual basis.  They challenge Mr. Baxter's methodology of using newspaper articles, internet key word searches, and court filings that are close enough in time to the incidents which give rise to this lawsuit. Defendants also state that at some time in the "future" they intend to file a *Daubert* motion with

regard to Mr. Baxter's opinion, even though the deadline for such motions has passed. *See* Doc. 27 at 2 (setting deadline of December 13, 2010 for pretrial motions, "including motions which may require a Daubert hearing.").[8]

Mr. Baxter's report certainly bolsters Plaintiffs' position, but it is not a deal-breaker. With or without this report, there are genuine issues of fact regarding whether the County Defendants acted with deliberate indifference to Plaintiffs' rights to safety and bodily integrity.

E.     Claims against County Defendants Premised on Underlying Violation

The Court notes that the above analysis regarding the County Defendants necessarily assumes that a constitutional violation occurred in the first place based on the conduct of Defendants Baca and Romero.  Without such a violation, the County Defendants cannot be held liable for any alleged failure to hire, train or supervise.  *See Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447 (10th Cir. 1990).

**IV.   Affirmative Defenses**

Plaintiffs argue that the County Defendants have not presented sufficient evidence to support their affirmative defenses. Some of these defenses include: failure to comply with the notice provision of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-16; limitation of damages under the Tort Claims Act; immunity from suit under the Tort Claims Act; failure to exhaust remedies. Doc. 8.  The basis for this argument is that Defendants have failed to answer the "contention interrogatories" propounded to them.[9]

---

[8]  On December 10, 2010, the Court amended case management deadlines, but only with regard to the deposition of Mr. Baxter. The Court noted that "[a]ll other case management deadlines will remain in place."  Doc. 65.

[9]  "Contention interrogatories" are requests for opinions or contentions that call for the application of law to fact.  *See* Rule 33(c); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535,

Plaintiffs have not previously moved to dismiss these affirmative defenses except as part of this summary judgment motion.  The County Defendants have pled eleven separate affirmative defenses in their Answer.  However, Plaintiffs have not provided specific documentation to show that Defendants have not adequately responded to their discovery requests.  The Court rejects Plaintiffs' wholesale approach to virtually eliminating all of Defendants' affirmative defenses, and thus the request is denied.[10]

### Conclusion

In sum, I find and conclude that Defendant Baca's plea to CSP does not estop him from defending against Plaintiff Sandoval's Eighth Amendment claims.  Plaintiff Sandoval is not entitled to summary judgment against both Defendant Baca and Defendant Romero because Defendants have presented material factual issues regarding whether the sexual encounter was consensual, and thus whether Plaintiff's Eighth Amendment rights were violated.

Summary judgment is denied as to Plaintiff Vigal's claims against Defendant Romero on the ground that there are material disputes of facts regarding whether Plaintiff Vigal's sexual encounter with inmate Henry Duran was consensual.  Plaintiffs have raised an evidentiary question concerning whether Plaintiff Vigal's prior sexual conduct should be excluded under Fed.R.Evid.P. 412.  The Court finds the issue moot for purposes of deciding this summary judgment motion.  However, if Defendants intend to introduce any of this evidence for trial, they shall follow the procedures outlined in Rule 412(c)(1) and (2), which envisions motions practice

---

544 (D. Kan. 2006). They are generally proper unless the request is overly broad and unduly burdensome on its face. *Hiskett v. Wal-Mart Stores, Inc*., 180 F.R.D. 403, 404-05 (D. Kan. 1998)).

[10]  One of these defenses – the notice defense for the Tort Claims Act – has been set for a hearing.  *See* Doc. 93.

as well as a hearing prior to the Court's determination on the issue.  Also, if Defendants wish to admit evidence for trial under Rule 412, they shall move for the admission of such evidence within **fourteen (14) days** of the entry of this Memorandum Opinion and Order to initiate the procedures under the Rule.

Plaintiffs' claims in Count II against Defendants Lujan and Snedeker will be considered under an Eighth Amendment theory, rather than under a substantive Fourteenth Amendment theory or a danger-creation theory.  With regard to Plaintiffs' claims against these County Defendants, Plaintiffs' counsel shall, by the time trial commences, clarify whether Plaintiffs are proceeding against these individuals on a direct liability theory or a supervisory theory. Summary judgment is denied as to Plaintiffs' claims against the County Defendants because these Defendants have presented facts which could infer to a reasonable fact finder that the policies and training provided did not deprive Plaintiffs of the minimal civilized measure of life's necessities, and further, that these Defendants did not posses a sufficiently culpable state of mind.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed by Plaintiffs Sandoval and Vigal (**Doc. 72**) is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE