**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

APRIL SANDOVAL,
EVANJELINA VIGAL,
and YVONNE ARCHULETA,

      Plaintiffs,

      v.                                                                              No. 09CV1028 WJ/ACT

JOSEPH ROMERO, VICTOR BACA,
JOHNNY LUJAN, PATRICK SNEDEKER,
in their individual capacities, and BOARD
OF COUNTY COMMISSIONERS OF
SAN MIGUEL COUNTY, NEW MEXICO,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S SUMMARY
JUDGMENT AS MOOT WITH REGARD TO PLAINTIFF ARCHULETA'S CLAIMS
UNDER NEW MEXICO TORT CLAIMS ACT
and
GRANTING SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF VIGAL'S
CLAIMS UNDER NEW MEXICO TORT CLAIMS ACT**

      THIS MATTER comes before the Court following an evidentiary hearing on a Motion for Summary Judgment Against Plaintiff Vigal and Plaintiff Archuleta for Failure to Provide Timely Tort Claim Notice, filed on January 10, 2011 by Defendant Board of County Commissioners of San Miguel County, New Mexico **(Doc. 71)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is denied as moot with regard to Plaintiff Archuleta's Tort Claims Act claims (for which she concedes dismissal), and is well-taken with regard to Plaintiff Vigal's claims brought under the Tort Claims Act.

      At the hearing, counsel for Plaintiff suggested that any disputes of material fact regarding notice under the Tort Claims Act be resolved at trial. However, the New Mexico Supreme Court

views this question as one to be resolved by an evidentiary hearing:

> The legislature has made actual notice of the occurrence an issue that may be the determinative factor in a given suit, and **certainly one worthy of an evidentiary hearing for the court to determine** whether, from the totality of circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation. Because under Section 41-4-16(B) actual notice is a jurisdictional question and separate from the ultimate issue of liability, whether the facts give rise to a reasonable inference that a claim may be filed is a **threshold inquiry to be resolved by the court**. *See Carrillo v. Rostro*, 114 N.M. 607, 625, 845 P.2d 130, 148 (1992) (Ransom, J., specially concurring). **The trial court must hold an evidentiary hearing** in this case to decide the threshold issue whether, from actual notice of the occurrence, Metro Court was on notice that it may be subject to a claim.

*Lopez v. State*, 122 N.M. 611, 616, 930 P.2d 146, 151 (N.M.,1996) (emphasis added). As a result, the question of notice under the Tort Claims Act will be determined herein by the Court as the fact finder after a consideration of the evidence and arguments heard at the evidentiary hearing.

## Background

The Plaintiffs in this case were female inmates at San Miguel County Detention Center ("SMCDC") in San Miguel County, New Mexico. They allege that they were sexual harassed and sexually assaulted by male detention officers and male inmates while they were incarcerated at SMCDC. The complaint alleges violations of Plaintiffs' civil rights under the Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985 and 1986, and state law violations under the New Mexico Tort Claims Act. Plaintiffs bring these claims against male detention officers at SMCDC and against Defendants Snedeker, Lujan and San Miguel County, asserting that these Defendants knew, in light of prior reported instance of sexual assault at SMCDC, that placing female inmates in the custody and control of male detention officers at the facility without providing sufficient training,

monitoring, and safeguards created a dangerous situation and posed a serious and substantial risk of sexual assault and other injuries to female inmates. However, these Defendants took no preventive or corrective action and failed to establish, maintain and implement a policy, practice and procedure to adequately protect female inmates from sexual advances, assaults, or harassment by male detention officers or male inmates. *See* Joint Status Report, Doc. 19.

In its motion, Defendant ("County") contends that the Court does not have jurisdiction over Plaintiff Archuleta and Plaintiff Vigal's state law tort claims because they did not provide timely notice of their intent to file tort claims against the County. In the Response, Plaintiffs concede the notice defense and to the dismissal of the state law tort claims (Counts IX and X) as to Plaintiff Archuleta. Thus, the only issue to be addressed by the Court is whether Plaintiff Vigal provided timely notice for her state law tort claims against the County and whether her state law tort claims should be dismissed.

## Discussion

Plaintiff Vigal asserts that she was raped by a male inmate in October or November of 2007. She claims that Defendant Romero, also a detention officer, orchestrated a scheme in which a male inmate, Henry Duran, would have sexual contact with Ms. Vigal and that Mr. Romero was paid for this service. Defendant contends that Plaintiff Vigal filed an untimely tort claim notice on June 8, 2008, six months after the incident is alleged to have occurred.

**I.    Legal Standard**

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact." *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotations omitted). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.* The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In this case, Defendant is asserting lack of notice as an affirmative defense, and thus bears the burden of pleading and proving that affirmative defense. *Pelt v. Utah*, 539 F.3d 1271, 1283-84 (10th Cir.2008) (Where the moving party seeks summary judgment on its own affirmative defense, it bears the burden of pleading and proving the affirmative defense). This means that, in presenting its undisputed facts, the County must "establish . . . all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id*.

**II.    Analysis**

As a general rule, whether or not notice has been given or received is a question of fact to be determined by the trier of fact. *Smith v. State ex rel. New Mexico Dept. of Parks and Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (N.M.App.,1987). Here, I must first determine whether Defendant has adequately put forth factual evidence to support its presentation of undisputed facts relating to its affirmative defense, and then determine whether Plaintiff has presented a material issue of fact which would infer to a reasonable fact finder that notice was in fact provided to the County under the requirements of the Tort Claims Act.

A.    <u>Notice of Defendant's Affirmative Defense</u>

Under NMSA 1978 § 41-4-16(A), the New Mexico Tort Claims Act ("Tort Claims Act") requires timely written notice to the public entity being sued within 90 days of the occurrence

genuine issue as to any material fact." *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotations omitted). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.* The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In this case, Defendant is asserting lack of notice as an affirmative defense, and thus bears the burden of pleading and proving that affirmative defense. *Pelt v. Utah*, 539 F.3d 1271, 1283-84 (10th Cir.2008) (Where the moving party seeks summary judgment on its own affirmative defense, it bears the burden of pleading and proving the affirmative defense). This means that, in presenting its undisputed facts, the County must "establish . . . all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id*.

**II.    Analysis**

As a general rule, whether or not notice has been given or received is a question of fact to be determined by the trier of fact. *Smith v. State ex rel. New Mexico Dept. of Parks and Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (N.M.App.,1987). Here, I must first determine whether Defendant has adequately put forth factual evidence to support its presentation of undisputed facts relating to its affirmative defense, and then determine whether Plaintiff has presented a material issue of fact which would infer to a reasonable fact finder that notice was in fact provided to the County under the requirements of the Tort Claims Act.

A.    <u>Notice of Defendant's Affirmative Defense</u>

Under NMSA 1978 § 41-4-16(A), the New Mexico Tort Claims Act ("Tort Claims Act") requires timely written notice to the public entity being sued within 90 days of the occurrence

giving rise to the claim for which immunity has been waived under the Act.

Plaintiff argues that the County is precluded from asserting a tort claims notice defense because Defendant has not presented a sufficient factual basis to present this affirmative defense. First, Plaintiff seeks to strike the affidavit of Melanie Rivera, County Clerk for the County of San Miguel, New Mexico because Ms. Rivera was not identified as a witness in the County's initial disclosures.  Ex. A.  Second, Plaintiff contends that Defendant failed to respond adequately to discovery requests concerning the lack of notice defense and as a result, should be barred from asserting this defense.  Neither argument has merit.

The Court will not strike Ms. Rivera's affidavit because Ms. Rivera was, in fact, disclosed to Plaintiff as the records custodian in the parties' Joint Status Report. *See* Doc. 19 at 20 ("such records custodians as may be necessary").  Defendant also represents that Ms. Rivera was disclosed in its initial disclosures.  Docs. 18, 20, 20.  It is irrelevant that Ms. Rivera's name was not disclosed as a witness, since her statements in the affidavit are offered in the capacity as records custodian, and thus Plaintiff was sufficiently on notice of Defendant's intention to use Ms. Rivera – or whoever else might have served in that office – as a witness.  Thus, the Court will consider Ms. Rivera's affidavit as evidence supporting Defendant's instant motion.

As for Plaintiff's contention that Defendant failed to disclose evidence of its basis for the lack of notice defense in response to Plaintiff's specific discovery request, this contention is not borne out by the record.  Nor is Plaintiff's contention that she presumed Defendant had withdrawn its affirmative defense when Defendant did not supplement its discovery responses.

The Federal Rules of Civil Procedure require a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it" and to "affirmatively state any avoidance or affirmative defense . . . ." Fed.R.Civ.P. 8(b), (c).  The reason defendants are

5

required to plead affirmative defenses is to avoid unfair surprise to the plaintiff. *See Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir.2008).[1] The Answer clearly enunciates Defendant's intention to pursue an affirmative defense based on the notice provisions of the Tort Claims Act, and cites to the specific statutory provision on which it based its affirmative defense. Doc. 8 at 11 ("Plaintiffs' Complaint is barred by its failure to comply with the notice provision of the New Mexico Tort Claims Act, Section 41-4-16 NMSA 1978."). The Joint Status Report, which was filed six months before discovery ended, also incorporates the County's affirmative defense based on lack of notice. Doc. 19 at 13.[2] Other than stating that notice was not provided under the Tort Claims Act, it is not clear what other kind of "evidence" Plaintiff expected to receive from Defendant, since it is a defense which is based on a *lack* of evidence of timely notice. Accordingly, I find that Plaintiff had notice of Defendant's tort claim defense, and that Defendant has sufficiently pled this defense for the Court to consider the evidence presented by Defendant in the instant motion.

B.      Statutory Compliance – Written Notice

Defendant contends that Ms. Vigal provided no written notice to the County under the Tort Claims Act, and thus, notice was untimely under § 41-4-16(B). For notice to be effective, "a written notice stating the time, place and circumstances of the loss or injury" must be

---

[1] The Tenth Circuit has not determined whether the notice pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny apply to affirmative defenses. *Baum v. Faith Technologies, Inc*. 2010 WL 2365451, 2 (N.D.Okla. 2010) (noting that "numerous federal courts have held [that] an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense.").

[2] On October 26, 2010, the Court granted a joint motion to modify the scheduling order, extending the discovery deadline to November 19, 2010.

presented

> to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body. . .

41-4-16(A).

In her Affidavit, Ms. Rivera (as County Clerk for San Miguel County) states that no Tort Claims Notice was filed with the County Clerk's office regarding the October/November 2007 incident involving Plaintiff Vigal.  Ex. A.  Plaintiff does not dispute the fact that she did not provide written notice to the County.  It is undisputed that Ms. Vigal, through her attorney, provided written notice to the Jail Warden about six months after the incident occurred.  Ex. B. However, this notice does not constitute written notice to the County, based on language in the statute which delineates which individuals or agencies are authorized to receive notice under the Tort Claims Act.  Thus, Plaintiff's Tort Claims Act claims must be dismissed unless the County had timely actual notice of those claims.

C.      Actual Notice

The purpose of the notice requirements of the Tort claims Act "is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit." *Lopez v. State*, 122 N.M. 611, 616, 930 P.2d 146, 151 (N.M.,1996).  As Plaintiff notes, the Tort Claims Act does not require that notice be in writing when "the governmental entity had actual notice of the occurrence." 41-4-16(B).  The notice requirement is satisfied "when actual notice of an accident has been given to an agent of the public entity within the ninety-day period." *Smith v. State ex rel. Dep't of Parks & Recreation*, 106 N.M. 368, 372, 743 P.2d 124, 128 (Ct.App.1987); § 41-4-16(B) ("no court shall have jurisdiction . . . unless notice has been given as required by this

section, or unless the governmental entity had actual notice of the occurrence"). A plaintiff need not provide an explicit statement that she intends to sue the entity. A reasonable inference of the likelihood of suit may arise from "knowledge of the facts and circumstances of the occurrence." *Lopez*, 122 N.M. at 616, 930 P.2d at 151. In order for Ms. Vigal's suit to be considered timely, the County must have had actual notice of the occurrence within ninety days of the alleged rape.

Plaintiff argues that the County had actual knowledge of the likelihood that she would file a lawsuit. New Mexico courts consistently have applied the "likelihood that litigation may ensue" standard, looking at whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation. *Lopez*, 122 N.M. at 615, 930 P.2d at 150 (citing *Smith v. State ex rel. Dep't of Parks & Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct.App.1987)). When a governmental entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability. *Id*. at 616, 930 P.2d at 151.

Plaintiff bases her actual notice argument on two exhibits which are attached as exhibits to the response. Exhibit 1 is a letter dated January 14, 2008 from the County's attorney to Mr. Marc Grano, Esq., Plaintiff April Sandoval's attorney. It lists documents relating to Plaintiff Sandoval's allegations of sexual assault, and mentions that "another woman also made a separate claim of sexual assault." The letter also references a document (listed as item number 34) described as a "memo" to Patrick Snedeker, the Warden from Johnny Lujan, who is the Chief of Security. This memo, which is attached as Exhibit 2 to the response, is dated November 19, 2007 and is written on San Miguel County stationery. It describes the incident reports for both Plaintiff Sandoval and Plaintiff Vigal.

Neither exhibit provides a sufficient basis to find that the County was put on notice of a potential lawsuit by Plaintiff Vigal. Exhibit 1 was written within the 90-day window required for notice, but there is no actual reference to Plaintiff Vigal in that letter. The letter was sent in response to the tendering of a Tort Claims notice regarding Ms. Sandoval, not Ms. Vigal:[3]

> At the time your client reported she was sexually assaulted, another woman also made a separate claim of sexual assault. This woman's claim and your client's claim are addressed and/or mentioned in several of the same documents.

Ex. 2 at 3. The reference to "another woman" holds no weight as far as notice to the County regarding Plaintiff Vigal's claim. Mr. Grano represented only Ms. Sandoval at the time Mr. Grano received the letter designated as Exhibit 1. *See* Deft's Hearing Ex. 3.[4] Mr. Grano also testified that he was not aware of the incident concerning Ms. Vigal until May or June of 2008. *See* Deft's Hearing Ex. 2. While the letter refers to the other woman's "claim," there is no reason to believe it means something other than an "allegation," particularly where it is clear that Mr. Grano had no knowledge of Ms. Vigal's incident at that point. The County did not have knowledge of potential liability stemming from Ms. Vigal's until much later, and requested coverage from its insurer for that incident on June 9, 2008. *See* Deft's Hearing Ex. 4.

Plaintiff's Exhibit 2 fares no better. The memo describes the investigation into allegations of rape by both Plaintiffs Sandoval and Vigal. However, the fact that the Jail Warden had notice that Ms. Vigal had been sexually assaulted does not create a reasonable inference of a likelihood of a lawsuit. Moreover, assuming Exhibit B put the Warden of the County Detention

---

[3] Plaintiff's brief identifies that other woman as Plaintiff Vigal, without any factual support.

[4] The Court admitted several exhibits tendered by Defendant at the hearing, which are designated in this Memorandum Opinion and Order as "Deft's Hearing Ex. ___." References to other exhibits are attached to the pleadings.

Center on notice of potential litigation, I cannot find, nor has Plaintiff offered, any authority for the proposition that notice to the warden of a county detention center is sufficient to constitute actual notice to the County for purposes of the Tort Claims Act. If this were true, then any incident report that crosses the warden's desk would constitute notice to the County under the Tort Claims Act.

While both alleged incidents occurred on the same evening, they are separate incidents. Ms. Sandoval alleges sexual assault by a staff member, but Ms. Vigal alleges rape by a male inmate which was coordinated by a corrections officer, Joseph Romero. According to a Quarterly Report submitted by Warden Snedeker to the County Manager, the Las Vegas Police Department conducted an investigation into the matter and concluded that Ms. Vigal's sexual relations with inmate Henry Duran were consensual. Ex. 5. Thus, it would not be logical for the County to believe this was a potential lawsuit.

Mr. Romero pled guilty to taking a bribe for his part in the incident. As defense counsel noted at the hearing, there is no correlating waiver in the Tort Claims Act from which a tort claim would arise. Finally, the report mentions that Ms. Vigal was taken with Ms. Sandoval to the jail's medical facility, and from there to the hospital for a medical examination. Mr. Lujan testified at his deposition that this was standard operating procedure for the jail on reports of assault. Deft's Hearing Ex. 6 at 58-59. Thus, there was nothing above and beyond which occurred in connection with the incident which should have alerted the County to potential liability.

Plaintiff also argues that instances of other sexual assaults reported at SMCDC, as well as civil litigation arising from these other instances, suffice as actual notice to the County of

Plaintiff's intent to pursue litigation.[5]  Under this argument, no future plaintiff alleging sexual assault at SMCDC would ever need to provide the County with notice of a lawsuit under the Tort Claims Act, by virtue of there having been other plaintiffs in other lawsuits.  There is also questionable relevance to incidents which pre-date the allegations by Ms. Vigal or Defendant Snedeker's tenure as Warden. This is too broad a net to cast over the County, and is contrary to the purpose of the notice provision in the statute.

Plaintiff relies on *Lopez* in arguing that notice was provided to the County in Ms. Sandoval's counsel's letter to the County and in the incident reports provided by the Chief of Security to the Jail Warden.  However, *Lopez* can be distinguished quite easily.  The plaintiff in *Lopez* tripped, fell and was injured in a courtroom at Metro Court.  It was undisputed that Metro Court prepared and Risk Management received a written report about the accident in which Lopez was injured.  Even though plaintiff did not provide formal notice to the State, the State nevertheless received notice of the incident through the written report which was forwarded to its Risk Management Division by the culpable governmental entity.  The case was remanded based on the fact that Metro Court had prepared and sent an investigative report to Risk Management, with the court finding that finding that "there was a genuine, threshold factual issue regarding actual notice to be decided by the trial court in an evidentiary hearing."  *Lopez*, 122 N.M. at 617,  930 P.2d at 152.  The court's finding was based largely on the factual information received by Risk Management about the incident:

> [T]the level of factual detail in the reports prepared by Metro Court and sent to Risk Management-including the severity of Lopez's injuries, the fact that she was

---

[5] *See, e.g., Romero v. Gonzales*, 96-cv-1424 JAP/RLP, Doc. 1 (D.N.M.); *Gold v. Griego*, 99-cv-1137 DJS/WD (D.N.M. 1999); *Thurman-McFarland v. Correctional Systems, Inc*., 03-cv-1462 LH/DJS, Doc. 1 (D.N.M. 2003).

>taken to the hospital, the deputy's notation that a "watch your step" sign was in the courtroom, and the building administrator's listing of witnesses-indicates that Metro Court understood Lopez might file a claim.

122 N.M. at 614.

Here, neither the memo written to the Warden by the Chief of Security on November 19, 2007 regarding the incidents alleged by Ms. Sandoval and Ms. Vigal, nor the quarterly reports written to the County Manager, are comparable to the reports discussed in the *Lopez* case. The incident report was not sent to the risk management division, or to any other entity charged with handling claims against the state. The incident report is just that: a listing of all incidents occurring at SMCDC. There is no liability language anywhere in the report, unlike the language contained in investigative report in the *Lopez* case.

Based on the foregoing reasons, the Court finds that the record, taken as a whole and in a light favorable to Plaintiff, does not contain a genuine issue of disputed fact which would reasonably infer that Defendant was on actual notice of its potential liability with regard to Ms. Vigal's claims. Accordingly, Defendant is entitled to summary judgment with regard to the claims of Ms. Vigal brought under the Tort Claims Act.

## Conclusion

Plaintiff Archuleta has conceded the dismissal of her claims brought under state tort law. Therefore, Counts IX and X will be dismissed with prejudice with regard to Ms. Archuleta. The Court finds and concludes that Defendant has pled the defense of lack of notice under the Tort Claims Act sufficiently for the Court to consider the evidence presented by Defendant in the instant motion.

The Court also finds and concludes that Plaintiff Vigal has presented no factual issue which would infer or suggest that the County received notice of her claims in Counts IX and X

as required under the Tort Claims Act, and thus those claims will be dismissed with prejudice.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment Against Plaintiff Vigal and Plaintiff Archuleta for Failure to Provide Timely Tort Claim Notice, filed on January 10, 2011 by Defendant Board of County Commissioners of San Miguel County, New Mexico **(Doc. 71)** is hereby DENIED AS MOOT with regard to Plaintiff Archuleta, who concedes dismissal of Counts IX and X; and is GRANTED as to Plaintiff Vigal with regard to Counts IX and X, for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE